John E. LESLIE and Evelyn G. Leslie, Petitioners-Appellees,

v.

COMMISSIONER OF THE INTERNAL REVENUE, Defendant-Appellant.

No. 485, Docket 33037.

United States Court of Appeals Second Circuit.

Argued May 14, 1969.

Decided July 15, 1969.

Robert I. Waxman, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, on the brief), for defendant-appellant.

M. Bernard Aidinoff, New York City (Sullivan & Cromwell, Kendyl K. Monroe and Willard B. Taylor, New York City, on the brief), for petitioners-appellees.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Commissioner of Internal Revenue appeals from a decision of the Tax Court, Charles R. Simpson, Judge, 50 T. C. No. 2. The decision allowed taxpayer,[1] a partner in Bache & Co., a brokerage firm, an interest deduction for federal income tax purposes in his return for the taxable year ending January 31, 1959, and held that no part of the firm's indebtedness in the taxable year was incurred or continued "to purchase or carry" tax-exempt securities within the meaning of Section 265(2) Int.Rev.Code 1954, 26 U.S.C. § 265(2). We hold that the Commissioner was correct in allocating a portion of the interest to indebtedness so incurred or continued, and reverse the determination of the Tax Court.

Appellee Leslie is a partner of Bache & Co., whose share of Bache's net profits for the 1959 taxable year was 2.-75344%. Bache's business consisted of buying and selling, as a broker for its customers, securities and commodity contracts. Bache acquired tax-exempt securities as a dealer for resale to customers, either by purchasing such securities on the open market or through its participation in syndicates that underwrote new issues of tax-exempt securities. In addition, Bache accepted orders from customers for tax-exempt securities. Bache also maintained a market in issues that it underwrote or in which it dealt. It did not encourage investment by the firm in such securities, and the securities were sold as quickly as possible, the house rule being 90 days. Tax-exempt obligations constituted less than 1% of the average monthly value of Bache's assets and tax-exempt interest income constituted less than ¼ of 1% of Bache's gross income. None of the tax-

---

1. Evelyn G. Leslie is a party to this suit only because a joint federal income tax return was filed for the taxable year.

exempt securities owned by Bache was used as collateral for any indebtedness incurred or continued by Bache.

The primary determinant of Bache's bank borrowings was the financing of customers' purchases of securities in margin accounts, and without such accounts receivable from customers there would have been no need for such bank borrowings. The carrying of customers' accounts receivable was essentially a financing transaction in which Bache borrowed funds from banks, securing this indebtedness by a pledge of customers' securities, in order to relend to customers at a higher rate of interest. These lending activities constituted a significant source of profit to Bache.

In Bache's general purpose checking accounts, funds were completely commingled so that the source of such funds could not be traced through the accounts to any particular application of the funds. The amount of money that Bache borrowed from banks was determined on a daily basis. While the purchase, continued ownership, or sale of tax-exempt obligations naturally had an effect on the day-to-day cash requirements of Bache, these transactions were not specifically considered in determining the amount of its bank borrowings. If total disbursements for the day were expected to exceed total receipts, Bache would borrow from banks the amount needed to maintain a reasonable cash position. There was no thought to liquidate some of the tax-exempt securities to reduce the amount which had to be borrowed, since these securities were not held as an investment, but as an incident of the brokerage business—through participation in syndications, through maintaining a market in tax-exempts, and through purchases for customers.

The total interest expense accrued by Bache on indebtedness was $2,853,271.-65, and the total amount of interest income on tax-exempt securities was $58,-933.24. The average monthly value of Bache's assets was $168,193,418.94, and the average monthly value of all tax-exempt securities owned by Bache was $1,935,522.67. The average monthly balance of Bache's bank borrowings was $77,661,538.46.

The Commissioner determined that such portion of the claimed interest deduction as was allocable to the firm's investments in tax-exempt securities was non-deductible under Section 265(2).

The Tax Court, in rejecting this argument, correctly notes that Section 265(2) disallows a deduction for interest on indebtedness only when the purpose for which the indebtedness is incurred or continued is to purchase or carry tax-exempt obligations. This is in contrast to Section 265(1) which disallows a deduction for tax-exempt income other than interest by "allocation" to one or more of these sources of income:

Section 265 * * *

No deduction shall be allowed for—

(1) Expenses.—Any amount otherwise allowable as a deduction which is *allocable* to one or more classes of income other than interest * * * wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 * * * which is allocable to interest * * * wholly exempt from the taxes imposed by this subtitle.

(2) Interest.—Interest on indebtedness *incurred or continued to purchase or carry obligations* * * * the interest on which is wholly exempt from the taxes imposed by this subtitle. * * * [emphasis added]

The applicable House and Senate reports on proposed amendments to the predecessor to Section 265 indicate that paragraph (2) is not to be applied when the only basis is that an indebtedness may be allocated to the earnings by a bank or financial institution of exempt terest.[2]

2. Thus, indebtedness incurred by a bank on its deposits is not treated under existing law as indebtedness incurred or continued to purchase or carry tax-exempt securities. [H.Rep. No. 704, 73d Cong., 2d Sess., pp. 21–22 (1934).]

Although simple to state, the "purpose" test is difficult to apply in practice. Certainly where borrowed funds are used directly to purchase tax-exempt securities, there can be no dispute as to the application of the statute. Drybrough v. C. I. R., 376 F.2d 350 (6th Cir. 1967). However, where business reasons not related to purchase of tax-exempt securities dominate the incurring of indebtedness, taxpayer is entitled to deduct the interest on the indebtedness. Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420 (7th Cir. 1968). The court in *Wisconsin* refused to accept the argument that "a reasonable person would sacrifice liquidity and security by selling municipals in lieu of incurring mortgage debt to finance a new plant." 388 F.2d at 423. Thus as to the taxpayer's borrowing to build a new plant, the loan for which was secured by a mortgage on the real estate, the court did not find a sufficiently direct relationship. However, the court disallowed the deduction with respect to the taxpayer's seasonal bank borrowings, the collateral for which was tax-exempt securities.[3]

We do not disagree with the Tax Court's statement that the borrowed money was not directly traceable to the continued holding of tax-exempts, and that the tax-exempt securities were acquired as a consequence of Bache's brokerage business and were held for only a minimal period.

On the other hand, there is merit to respondent/appellant's argument that Bache borrowed money for the purpose of conducting its business, including the holding of some tax-exempt securities, and that since the use of the borrowed funds cannot be traced, it is reasonable to allocate them to all the business purposes of Bache. It is not enough to reply, as did the Tax Court here, that Section 265(2) was not intended to be applied merely on the basis of an allocation of indebtedness to the purchase or carrying of tax-exempt securities. As the 7th Circuit in *Wisconsin Cheeseman* noted, the need for incurring indebtedness was ordinary and recurrent. Had Bache not held the tax-exempt securities, its monthly average assets would be decreased by $1,935,522.67, and it presumably would incur decreased indebtedness in that amount, and thence decreased interest expense.

Moreover, the fact that money was borrowed "in the conduct of Bache's large and many-sided business activi-

To do so might seriously interfere with the sale of Federal and State securities, which would be unfortunate during the present emergency * * *. Thus, a bank or other financial institution will not be denied a deduction for expenses incurred in earning tax-exempt interest. [S.Rep. No. 558, 73d Cong., 2d Sess., p. 27 (1934).]

3. See 388 F.2d at 422:
As the Court of Claims stated in Illinois Terminal Railroad Company v. United States, 375 F.2d 1016, 1021, 179 Ct.Cl. 674 (1967):
"It is necessary [for the Commissioner] to establish a sufficiently direct relationship of the continuance of the debt for the purpose of carrying the tax-exempt bonds."
This construction flows from the use of "to" in Section 265(2). In this case, this *nexus* of "sufficiently direct relationship" is *established by the fact that the tax-exempt securities were used as collateral for the seasonal loans.* Under

Section 265(2), it is clear that a taxpayer may not deduct interest on indebtedness when the proceeds of the loan are used to buy tax-exempts. 4A Mertens, Law of Federal Income Taxation (1966 ed.) § 26.13 and cases cited. Applying the rule that the substance of the transaction is controlling in determining the tax liability, the same result should follow when the tax-exempt securities are used as collateral for a loan. Surely one who borrows to buy tax-exempts and one who borrows against tax-exempts already owned are in virtually the same economic position. Section 265(2) makes no distinction between them.

In addition, our analysis of the statute and its legislative history convinces us that the *deduction should not be allowed if a taxpayer could reasonably have foreseen* at the time of purchasing the tax-exempts that a *loan would probably be required to meet future economic needs* of an ordinary, recurrent variety. * * * [emphasis added]

ties" by no means negates the existence of a purpose, to the extent that the borrowing allowed Bache to deal in and retain a portion of the tax-exempts. To the contrary, in computing its daily cash needs for the purposes of borrowing, Bache took into account the amount of intended purchases of tax-exempt securities. Bache was, in essence, using the United States to finance its purchases of tax-exempt securities to the extent that it obtained an interest deduction allocable to a business income on which it paid no tax.

Such a result is contrary to the purpose of the interest deduction. The reason for allowing a deduction for interest expenses is that Congress intended that only gains be taxed, rather than gross income. However, the whole basis for the interest deduction is undercut when the indebtedness giving rise to the interest expense is allocable to financing an income on which there is no tax.

Nor does the exemption of banks and financial institutions aid Bache here. To the extent that there is a Congressional purpose to exclude banks and financial institutions from the application of Section 265(2), this purpose would not extend to Bache, since Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931) held the identically worded predecessor to Section 265(2) applicable to a brokerage business. The Tax Court was concerned with whether or not Bache was "consciously" considering selling off the tax-exempts, or whether there was a "plan" to invest and hold tax-exempts.[4] But this should not control. A more appropriate interpretation of Section 265(2) is whether or not there is a business "purpose" to purchase or carry obligations the interest on which is exempt, and to incur indebtedness therefor. Cf. Wynn v. United States, 288 F.Supp. 797 at 802 (E.D. Pa.1968), aff'd per curiam 411 F.2d 2614 (3d Cir. May 14, 1969). Applying this test, it is clear that Bache incurred indebtedness to carry tax-exempt securities. As the Tax Court found, if Bache "had held no tax-exempts, it would have had to borrow less." The Tax Court further found, by implication, that in computing its daily cash needs for the purposes of borrowing, Bache took into account the amount of intended purchases of tax-exempt securities. As the Supreme Court noted in *Denman, supra,* "The manifest purpose of the exception in paragraph 2 [of the predecessor to § 265] was to prevent the escape from taxation of income properly subject thereto by the purchase of exempt securities with borrowed money." 282 U.S. at 519, 51 S.Ct. at 270.

"Allocation" in Section 265(1) should not be confused with allocation in order to determine the measure of the disallowance in a situation where it was not possible to trace borrowed money directly to the holdings of tax-exempt securities. Once a determination under Section 265(2) is properly made, i.e., that a portion of the indebtedness was incurred or continued to purchase or carry tax-exempt securities, the purpose requirement is satisfied, and the fact that allocation is employed as a fairer measure of the appropriate disallowance[5] than disallowing the entire inter-

4. Joint Appendix, p. 134.

5. "The respondent's determination that $25,913.00 of the interest accrued by Bache was not deductible under section 265(2) was computed as follows: The total interest accrued by Bache less interest accrued on bank borrowings used to purchase United States Government bonds was multiplied by a fraction, the numerator of which was the value of tax-exempt securities held by Bache (excluding the value of tax-exempt securities purchased with customers' credit balances in commodity accounts) less the value of tax-exempt securities for which payment had not yet been made and less the value of tax-exempt securities owned by partners and deposited with Bache in lieu of capital. The denominator of the fraction was the value of Bache's total assets less the value of United States Government bonds purchased with the proceeds of borrowings secured by such bonds, less the value of tax-exempt securities for which payment had not yet

est on the outstanding debt does not take the interest expense out of Section 265 (2). In other words, the Tax Court was incorrect in holding that the only grounds which existed for the disallowance was "allocation" mathematically. There was a direct relationship between the continuance of the debt and the carrying of the tax-exempt securities.

Reversed.

been made, and less the value of securities, including tax-exempt securities, owned by partners and deposited with Bache in lieu of capital." Opinion of the Tax Court, 50 T.C. 11, discussing the Commissioner's formula for allocation.