EDMUND F. BALL AND VIRGINIA B. BALL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4151–68.   Filed June 4, 1970.

*Lester M. Ponder, Anton Dimitroff,* and *Edward W. Harris III,* for the petitioners.

*James J. McGrath,* for the respondent.

OPINION

We must decide if certain interest deductions claimed by petitioners in 1962, 1963, and 1964 are barred by section 265(2) which provides:

SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.

No deduction shall be allowed for—

\*   \*   \*   \*   \*   \*   \*

(2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations \* \* \* the interest on which is wholly exempt from the taxes imposed by this subtitle.

The Commissioner argues that petitioner is within the scope of section 265(2) since he held tax-exempt securities at the same time he borrowed to make investments. As his main authority, the Commissioner relies on *United States* v. *Atlas Ins. Co.*, 381 U.S. 233 (1965). However, we believe his reliance is misplaced. *Atlas Ins. Co.* concerned itself with the statutory construction of a portion of the Life Insurance Company Income Tax Act of 1959. Under the Act, a company had to divide its investment income into two parts; the policyholder's share and the company's share with a prorata allocation of each item of income between the two shares. Under the Act, only the company's share was taxable, the policyholder's share was a deduction for determining taxable income. The issue was whether income from tax-exempt securities had to be prorated or whether the company could allocate all of such income to its share. The Court held that a proration was required.

All of the above seems irrelevant to the issue before us. However, the Commissioner seizes on a footnote[2] in the opinion which he says controls the situation here.

The Court there stated:

interest can be said to be incurred or continued as a cost of producing exempt income whenever a taxpayer borrows for the purpose of making investments and in fact invests funds in exempt securities.

---

[2] *United States* v. *Atlas Ins. Co.*, 381 U.S. 233, 248–249 fn. 17 (1965).

The relevance of this statement to section 265 (2) is that it was made in connection with a discussion by the Court of the scope of *Denman* v. *Slayton*, 282 U.S. 514 (1931), which upheld the constitutionality of a predecessor of section 265 (2) as applied to a dealer in tax-exempts who borrowed funds and invested them in tax-exempts.

The Commissioner argues that the above statement covers petitioner since he had tax-exempts and at the same time incurred indebtedness. We believe the Commissioner has misread the statement he relies on. We believe that that statement covers the situation where an individual borrows and uses such borrowed funds to purchase tax-exempts. Such is not the case here since taxpayer made no new investments in tax-exempts during the years in question. We come to our conclusion in this regard from the context in which the statement is found in *Atlas Ins. Co.*, *supra*.

We believe that the proper rule to guide us here has already been stated. *Wisconsin Cheeseman, Inc.* v. *United States*, 388 F. 2d 420 (C.A. 7, 1968) ; *Illinois Terminal Railroad Co.* v. *United States*, 375 F. 2d 1016, 1021 (Ct. Cl. 1967). What these cases tell us is that the deduction is barred if there is "a sufficiently direct relationship" between the incurrence or continuation of indebtedness and the carrying of tax-exempt securities. The application of the section to a particular factual setting is dependent on the purpose for which indebtedness was incurred or continued. *Kirchner, Moore & Co.*, 54 T.C. 940 (1970).[3] With this test, it is clear that a "taxpayer is not *ipso facto* deprived of a deduction for interest on indebtedness while holding tax-exempt securities." *Wisconsin Cheesman, Inc.* v. *United States*, *supra* at 422; *Bernard H. Jacobson*, 28 T.C. 579 (1957) ; *R. B. George Machinery Co.*, 26 B.T.A. 594 (1932). And it is equally clear from the legislative history, that a mechanical test was not desired *Illinois Terminal Railroad Co.* v. *United States*, *supra* at 1022.

We are of the opinion that the requisite sufficiently direct relationship between the incurring of various indebtedness by petitioner and his holding of tax-exempt securities, is absent here, except for the general one that the incurring of indebtedness allowed petitioner to retain his tax-exempt holdings. However, if this were a sufficient ground for disallowing the interest deduction, then section 265 (2) would in fact be a mechanical test; i.e., the deduction would be disallowed whenever indebtedness was incurred while tax-exempts were held. As we have indicated, this is not the result that the statute was intended to achieve.

---

[3] And cf. *Leslie* v. *Commissioner*, 413 F. 2d 636 (C.A. 2, 1969), which we noted in *Kirchner Moore & Co.*, 54 T.C. 904, agreed with the Tax Court "purpose" test, but nonetheless held the relationship between the amount of monthly loans and the purchase and carrying of tax-exempt securities made sec. 265(2) applicable.

When we examine each of the debts for which the Commissioner has disallowed the interest deduction, we find that there is no relationship at all between them and petitioner's holding of tax-exempts.

### 1. *First National Bank & Trust Co. of Chicago Loan*

Petitioner's loan from First National Bank & Trust Co. of Chicago originated in 1956, when a corporation, B. B. & S. Properties, Inc., in which petitioner was a shareholder, suffered financial reverses because of a very serious drought which caused its cattle herd to be liquidated at a great loss. Petitioner personally assumed a loan in the amount of $140,000 which the bank had made to the corporation, in order to prevent its insolvency. As of the beginning of the taxable period, petitioner had paid this loan down to $45,000 and the remaining balance of $15,000 was paid on April 17, 1964.

### 2. *Liberty National Bank & Trust Co. of Oklahoma City Loan*

Petitioner's loan from Liberty National Bank & Trust Co. of Oklahoma City, Okla., was obtained for use in investing in oil-drilling operations. There was a master note against which the oil operators drew from time to time to cover expenses of the operations, and the income from the venture was paid back to the bank to reduce the note and to pay the interest thereon. This explains the fluctuation in the outstanding balances during the taxable period from a low of $9,212 on January 1, 1962, to a high of $25,988 on May 26, 1964.

### 3. *Frances H. Burris Loan*

At the beginning of the taxable period, petitioner was indebted to Frances H. Burris in the amount of $9,538, resulting from an obligation in connection with the purchase of the V–L Ranch by petitioner, which obligation was entirely paid in 1962.

### 4. *American National Bank & Trust Co. of Muncie Loan*

Petitioner borrowed $47,250 from American National Bank & Trust Co. of Muncie, Ind., on May 2, 1963, to purchase stock in Pasteur Medical Building Corp., which was engaged in a real estate project. Petitioner sold his interest in the corporation in 1964, and the sales proceeds were used to repay the bank on November 12, 1964.

### 5. *Merchants National Bank & Trust Co. of Muncie Loan*

Petitioner borrowed $150,000 from Merchants National Bank & Trust Co. of Muncie on June 5, 1964. Of this amount, $19,000 was

used to pay off the mortgage on the V–L Ranch, which petitioner had purchased on April 2, 1962, for $121,638. The remainder was used to finance the purchase of the Indian Spring Ranch in New Mexico, which petitioner had purchased on April 30, 1964, for $149,472.

The only other loan was $20,000 from Merchants National Bank & Trust Co. of Muncie on July 15, 1963, to provide funds for a payment of Federal income taxes, which was repaid on August 6. 1963.

As appears from our Findings of Fact, petitioner's motivation in regard to all these debts, except the loan to pay his income tax, was to create profitable investments. It had no direct relationship to creating tax-exempt income.

Petitioner's uncontradicted testimony supports this conclusion and does not give even an inkling of any relationship between the incurring of the debts and the holding of tax-exempts.

Finally, we believe the decision in *Wisconsin Cheeseman, Inc.* v. *United States, supra,* supports our decision here in favor of petitioner. One of the issues there concerned the interest on a mortgage incurred to finance a new plant. The Court held that the interest expense on the mortgage was deductible, even though the taxpayer held tax-exempts, because there was not a sufficient relationship shown between the two. In reaching its decision, the Court noted the following factors: (1) The tax-exempts were not used as collateral to secure the mortgage; (2) the mortgage was incurred to finance a major nonrecurring expenditure, usually financed over a long term; (3) a reasonable person would not sacrifice liquidity and security by selling tax-exempt municipal bonds in lieu of incurring mortgage debt to finance a new plant; and (4) business reasons dominated the mortgaging of the property.

Most of these reasons are applicable in the present case. All of petitioner's loans were used to finance major, nonrecurring opportunities which were conducive to long-term financing, and were not foreseeable when the tax-exempt securities were purchased. Business reasons were the sole motivation for petitioner's incurring indebtedness to finance new ventures. Petitioner owned what both he and his investment adviser considered to be an "absolute minimum" of tax-exempt securities during the entire taxable period. A reasonable person in his position would not necessarily have sacrificed the liquidity and security provided by his tax-exempt holdings by liquidating these holdings instead of incurring indebtedness to finance his ventures.

We hold that the Commissioner erred in disallowing petitioner's claimed interest deductions.

*Decision will be entered under Rule 50.*