Ellis I. LEVITT and Nelle S. Levitt, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 72-67-1.

United States District Court, S. D. Iowa, Central Division.

Jan. 9, 1974.

David W. Belin and Jeffrey E. Lamson, Herrick, Langdon, Belin & Harris, Des Moines, Iowa, for plaintiffs.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, Robert J. Hipple and Edward J. Snyder, Dept. of Justice, Scott P. Crampton, Asst. Atty. Gen., Stephen J. Csontos, Dept. of Justice, for defendant.

## MEMORANDUM AND ORDER

STUART, District Judge.

Taxpayers brought this action to recover refunds they maintain are due because of wrongful assessments of additional income tax, interest and penalties for the years 1963, 1964 and 1965.

Taxpayers are husband and wife who reside in Des Moines. They have substantial holdings in bonds, stocks and real estate. During the years in controversy here, they also had significant amounts of tax-exempt bonds which either returned substantial amounts in interest or matured thus freeing sizable amounts of cash. In addition, Mrs. Levitt received several large distributions from trust income.

While taxpayers were in possession of these assets, during the years in question they were also making other investments which led to this lawsuit. These investments were financed by a number of large loans from the Iowa-Des Moines National Bank. When taxpayers sought to deduct the amount of interest paid on these loans from their income taxes pursuant to Section 163 of the Internal Revenue Code (26 U.S.C. § 163), the Commissioner of the Internal Revenue Service denied the deductions under Section 265(2) (26 U.S.C. § 265(2)).

At that point taxpayers paid the additional income taxes, penalties and interest, and then sought a refund. The Commissioner denied the refund and taxpayers then instituted this suit. The additional amounts paid were $20,641.43 for 1963; $23,682.25 for 1964; and $6,837.42 for 1965.

Plaintiffs and defendant reached a stipulation which was filed with the Court. Both parties then moved for summary judgment, and the Court took the case under submission upon written briefs and oral argument.

The legal principles involved in applying section 265(2) are discussed in the following cases: Mariorenzi v. Commissioner (1973), 32 T.C.M. 681; Indian Trail Trading Post, Inc. v. Commissioner (1973), 60 T.C. 497; Bradford v. Commissioner (1973), 60 T.C. 253; Batten v. United States (D.C.Va., 1971), 322 F.Supp. 629; Norfolk Shipbuilding & Dry-Dock Corp. v. United States (D. C.Va., 1971), 321 F.Supp. 222; Ball v. Commissioner (1970), 54 T.C. 1200; Leslie v. Commissioner (CA 2, 1969), 413 F.2d 636, cert. denied, 396 U.S. 1007, 90 S.Ct. 564, 24 L.Ed.2d 500; Wisconsin Cheeseman, Inc. v. United States (CA 7, 1968), 388 F.2d 240; Illinois Terminal Railroad Co. v. United States (1967), 375 F.2d 1016, 179 Ct.Cl. 674; Bishop v. Commissioner (CA 4, 1965), 342 F.2d 757; Jacobson v. Commissioner (1957), 28 T.C. 579.

From these cases the following principles can be distilled.

■ Section 265(2) of the Internal Revenue Code of 1954 disallows a deduction for interest "on indebtedness incurred or continued to purchase or carry" tax exempt securities (tax exempts). This statutory disallowance is not activated merely because the taxpayer has or incurs an indebtedness at the same time he is purchasing or holding tax exempts. In other words, the taxpayer is not automatically required to liquidate his tax exempts to obtain needed funds rather than obtain the funds by independent borrowing. However, the taxpayer cannot avoid the application of section 265(2) by juggling his available assets in an attempt to separate the indebtedness from the acquisition or holding of tax exempts.

■■ If the indebtedness is incurred or continued for the purpose of purchasing or carrying tax exempt securities section 265(2) applies. The purpose is determined by consideration of all the

facts and circumstances involved. The deduction will be barred if there is a sufficiently direct relationship between the incurring or continuing of the indebtedness and the acquisition or holding of the tax exempts.

The taxpayer has the burden of overcoming the presumption of validity of the commissioner's determination of the deficiencies.

The difficulty lies, not with the statement of the legal principles involved, but with their application to the facts of each particular case. It is necessary, therefore, to analyze the transactions to determine their purpose and relationship to the non-taxable securities.

### Nelle Levitt

Since 1958 Mrs. Levitt has held substantial amounts of tax exempts. In the latter part of 1960 she borrowed $84,000 to purchase $84,000 in U.S. Government Bonds. At that time she held over $140,000 in tax exempts. The government bonds were redeemable at face to pay estate taxes.

From 1961 to 1964 her holdings of exempt securities increased substantially. They were purchased from income received from a trust. In mid-1964 she owned about $300,000 in tax exempts. August 24, 1964 she purchased $10,000 more. On September 9, 1964 she borrowed $85,891 and purchased $85,891 in government bonds. She continued to increase her tax-exempt holdings and on December 31, 1965 she owned about $398,000 face value of tax exempts. None of the loans had been repaid and on the same date she owed Iowa-Des Moines National Bank $210,000 all of which had been invested in U.S. Treasury Bonds to provide funds for estate tax and take advantage of the redemption at par provision.

The use of U.S. Treasury Bonds redeemable at par to pay estate tax is a valid estate planning device, but the borrowing of funds to make such purchases under all the facts and circumstances here in the opinion of the court brings these transactions within section 265(2).

There are several aspects in these transactions which persuades the Court that the purpose of these loans was to enable Mrs. Levitt to carry and purchase tax exempt securities.

Mrs. Levitt received from the trust the following income: 12–31–62, $105,309; 12–31–63, $114,425; 12–31–64, $120,446. Most of this money was used during the ensuing year to purchase tax exempts. At the same time existing loans were not reduced. In 1964 additional money was borrowed to purchase U.S. Treasury Bonds. Although the record does not show the interest rate, it seems safe to assume that the interest paid on the bank loans exceeded the interest returned on the government bonds. So the loan could not have been a good business venture in and of itself. The only actual benefit to the taxpayer in borrowing the money to buy the treasury bonds, rather than use the tax exempts for that purpose, was the overall tax savings.

Although the treasury bonds were purchased to meet future estate tax obligations, they were, of course, of high liquidity. There is nothing in the record to indicate the tax exempts were not also readily salable. There was no long term commitment which made a bank loan advisable. There is no logical reason why the trust income was not used to purchase the government bonds or reduce the loan, except that Mrs. Levitt wanted to use it to hold or increase her tax exempt holdings. There is no good business reason, other than the desire to carry tax exempt securities, offered why the tax exempts or trust income were not used to purchase the government bonds rather than borrow additional sums from the bank.

The substantial tax-exempt holdings and sizable static bank loans of a person whose net worth exceeded $1,000,000 on December 31, 1965 is also a factor to be considered in determining the relationship between tax-exempt holdings and the bank loan.

Plaintiffs also argue interest paid on loans to purchase U.S. Treasury Bonds is specifically deductible under I.R.S. Reg. 1.265–2(a) which provides:

> * * * Interest paid or accrued within the taxable year on indebtedness incurred or continued to purchase or carry (1) obligations of the United States issued after September 24, 1917, the interest on which is not wholly exempt from the taxes imposed under subtitle A of the Code * * * is deductible.

They state there should be no argument whatsoever that interest on this type of loan is fully deductible.

The government in its brief ignores this argument and the sentence of the regulation which appears to support plaintiffs' contention. It would seem this obvious tax savings device would have been attempted and challenged previously, but no cases have been cited, and we have found none, dealing specifically with this situation. It may be that the I.R.S. has found no way to explain its own regulation to avoid the conclusion reached by plaintiffs. It would have been helpful to have the government's comments on this point.

■ However, as such interpretation seems to provide an obvious circumvention of the statute, and the regulation would be contrary to the purpose of the statute if so interpreted as suggested, I hold that even though interest on loans to purchase treasury bonds which carry taxable interest is ordinarily deductible, it cannot be deducted if the purpose of such loan is to enable the taxpayer to purchase or carry tax-exempt securities.

The fact that I.R.S.Reg. 1.265–2(a) provides that interest paid on loans secured to buy U.S. Treasury Bonds is deductible does not negate the general provisions under Section 163 of the Internal Revenue Code which controls interest deductions and the exception expressed in section 265(2). The regulation interprets section 265(2), but it can not alter the intent of the statute or allow a deduction that the statute as construed by the courts does not permit.

■ There is no question but what the loan proceeds were used directly to purchase United States obligations. If this were the only aspect of the transaction, the interest would be deductible under the terms of the statute. But the loan also had a direct relationship with the fact that it thus enabled the taxpayer to carry obligations on which the interest is wholly deductible.

I don't believe Congress intended that the deductibility of interest on a loan for the purchase of treasury bonds should automatically prevail when the circumstances show that the ultimate effect of that purchase was to allow the taxpayer to carry tax exempt securities, rendering the interest non-deductible. It appears to me that this matter should be resolved in accordance with the applicable principles of law previously set forth.

Taxpayers' reading of the regulation appears to arrive at the conclusion that, because the regulation permits interest deductions for loans used to buy treasury bonds, then the mere fact a taxpayer is carrying or continuing loans to carry tax-exempt bonds is of no effect. If taxpayers' argument was followed to its logical conclusion, it would be possible for a person to carry as many tax-exempt bonds as he could afford, while at the same time borrow any amount of money he desired to purchase U.S. Treasury Bonds and still be able to deduct the interest payments on the loans. Such a theory would legitimize double deductions and in my opinion completely controvert Congressional intent in the passage of section 265(2).

The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. Knetsch v. United States (1960), 364 U.

S. 361, 365, 81 S.Ct. 132, 5 L.Ed.2d 128. See also Gregory v. Helvering (1935), 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596. In my opinion, taxpayers' attempts here to deduct that interest paid on the loans used to purchase the treasury bonds is not permissible under 26 U.S.C. § 265(2).

### Ellis Levitt

### U.S. Treasury Bonds

By the end of 1960 Mr. Levitt had acquired about $809,000 in tax exempt securities and incurred indebtedness of about $242,000 to purchase U.S. Treasury Bonds redeemable at par to pay federal estate taxes. Since that time his holdings of tax exempt securities have decreased. On December 31, 1965 he owned approximately $574,000 in tax exempts. In 1964 he borrowed an additional $172,000 to purchase more treasury bonds. Between 1959 and December 31, 1965, he borrowed $415,000 to purchase treasury bonds which he still owns. The total loan is still outstanding.

Much of what was said about Mrs. Levitt's claim is applicable to Mr. Levitt's debts for the purchase of the treasury bonds. His purchase of tax exempts were considerably less than the redemption after 1960, but none of the proceeds from the redeemed tax exempt securities were used to purchase treasury bonds or reduce the loans.

The Court is of the opinion that there is a sufficient direct relationship between the carrying of the tax exempt securities and the incurring and continuing of interest bearing loans used to purchase treasury bonds to support the Commissioner's determination that such was the purpose of the loans and the denial of the deduction of the interest paid thereon for income tax purposes.

### Insurance Policy

In 1961 Dial Finance Company discontinued carrying policies on its executives and Mr. Levitt acquired the policies on his life on November 30, 1961 by borrowing $260,000 against the cash value of these life insurance policies.

There were substantial investment advantages in acquiring these policies and the necessity for their purchase grew out of a situation over which Mr. Levitt did not have control. This appeared to be a legitimate long term investment similar to the situation confronting the taxpayer in Ball, supra, and here his motive was to create a profitable investment and to protect the value of the insurance policy and avoid surrender for cash value. This was a major non-recurring outlay of cash for business reasons and it would be reasonable not to sacrifice the liquidity of the tax exempt to finance such a commitment.

In my opinion the taxpayer has met his burden of overcoming the Commissioner's determination and that the amount of interest paid on the loan for the purchase of the insurance policy is deductible for income tax purposes.

### Real Estate Investments

In the same regard, I am of the opinion that the loans secured by Ellis Levitt for the purpose of long-term real estate investments were proper, and the interest paid on those loans is fully deductible. Ball, supra.

Those loans were made specifically to buy land for a new post office, to purchase real estate in Urbandale, Iowa, and to pay a liability in connection with a motel investment. Each of these loans was made with the idea of being a long-term investment.

To this extent, it appears that the "motivation in regard to all these debts, . . . was to create profitable investments. It had no direct relationship to creating tax-exempt income." Ball, supra, 54 T.C. 1209. As in Ball, these investments are major, non-recurring items. Business reasons were the motivation for the incurring of the indebtedness to finance the new ventures. Ball, supra, 54 T.C. 1209.

### Payment to Wife

The loan made by Nelle Levitt to Ellis Levitt has not been discussed at length by either party. The loan was originally made by Nelle Levitt to enable Ellis to pay gift taxes. Other sources were utilized to repay a portion of the loan, however, Ellis also borrowed $27,000 from the Iowa-Des Moines National Bank to complete payment of the original loan.

While considerable discussion could be devoted to the nature of this loan, I am satisfied from the circumstances of the case that its purpose had no direct relationship to the carrying of any tax-exempt bonds. Relying again on *Ball,* where the Tax Court allowed a deduction for interest paid on a loan whose proceeds were used to pay income taxes, I find no real difference present here and am of the opinion that the interest deduction should be allowed on the money borrowed to repay Nelle Levitt.

### Tax-exempt securities as collateral

The holding of tax exempt securities as collateral for a loan is direct evidence that the purpose of the loan is to carry tax-free securities. Wisconsin Cheeseman, Inc. v. United States, supra; Norfolk Shipbuilding & Dry-Dock Corp. v. United States, supra. During the period in question the bank held tax exempts owned by Ellis Levitt which varied from $154,000 to $261,000 cost or market value. In the event that my ruling on the interest on loans made to purchase U.S. Treasury Bonds is erroneous, the interest deduction on loans should be disallowed to the extent that the loans on which the interest deduction is claimed is secured by tax exempt securities. However, this disallowance should not be in addition to the disallowance of interest deduction resulting from loans to purchase U.S. Treasury Bonds.

### SUMMARY

I therefore hold:

1. The interest paid by Nelle Levitt on loans made in order to purchase U.S. Treasury Bonds is not deductible under section 265(2).

2. The same result that was announced as to the interest deduction for money borrowed to buy treasury bonds by Nelle Levitt applies as to Ellis Levitt; the deduction is not allowable.

3. The interest paid on the loans secured to allow Ellis Levitt to purchase approximately $260,000 in life insurance policies formerly paid for by his employer is deductible.

4. The loans made for the various real estate ventures: post office site acquisition, motel investment, etc., are legitimate long-term investments and the interest paid on those loans is deductible.

5. Personal Loan: the interest paid on this loan used by Ellis Levitt to repay his wife is deductible.

6. Tax-exempt Securities as Collateral: the disposition of the case does not turn on this issue, however, in the event it did become dispositive, the interest paid on the loans used to purchase treasury bonds would be disallowed to the extent that the loans on which the interest deduction is claimed are secured by tax exempt securities.

The parties in this case have agreed between themselves that the Court need not make a determination of the amount of the refunds due in the event the Court should rule that some or all of the amount sought by taxpayers should be returned. Instead, the parties have indicated to the Court that they will work out a distribution, subject to the approval of the Court, in accordance with the ruling in this case. The Court is of the opinion that this distribution should be agreed upon by the parties within 30 days from the filing of this opinion, and then submitted to the Court for final approval.

The Court is of the further opinion that the parties should bear their own costs in this action.

It is so ordered.