Bernard M. BARENHOLTZ, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 85–2250.

United States Court of Appeals, Federal Circuit.

Feb. 19, 1986.

**376**

David C. Sprafkin, New York City, argued for appellant. With him on the brief was Samuel M. Sprafkin.

Bruce Ellisen, Tax Div., Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Robert A. Bernstein.

Before MARKEY, Chief Judge, SMITH and NIES, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Plaintiff-appellant Bernard M. Barenholtz (Barenholtz) appeals from a United States Claims Court judgment dismissing his suit for refund of federal income taxes for the years 1975, 1976, and 1977. The Claims Court concluded that Barenholtz could not deduct interest on loans which were used to carry tax-exempt bonds to the extent the interest was attributable to the portions of the loans secured by the tax-exempt bonds. The court ruled that the Government's computation of tax liability

was correct and that Barenholtz was not entitled to any refund. We affirm.

*Issues*

The two issues are: (1) whether the Claims Court was correct in its decision that Barenholtz' Pyne Press loans were used to carry tax-exempt bonds, within the meaning of section 265(2) of the Internal Revenue Code; and (2) whether the Claims Court was correct in its computations leading to the result that Barenholtz was not entitled to a refund for any of the 3 years in issue.

*Background*

In July 1982, Barenholtz filed this action in the United States Court of Claims for a refund of federal income taxes. He sought to recover income taxes in the amounts of $7,093, $24,044, and $25,066, plus interest, for the taxable years 1975, 1976, and 1977, respectively. The Claims Court delivered an oral opinion from the bench after the trial. Subsequently, the parties disagreed as to whether Barenholtz was entitled to any refund pursuant to the court's ruling. The court issued an oral ruling that the Government's computation was correct and that Barenholtz was not entitled to any refund. The court entered its judgment on March 4, 1985.[1]

The relevant facts are summarized below.

A. *Disallowed Interest Deductions.*

In July 1969, Barenholtz retained an investment management and counseling firm to manage his securities. From August through December 1969, Barenholtz acquired tax-exempt bonds having a value of $525,000. Thereafter, and through 1977, he neither sold nor bought any tax-exempt securities.

In 1969, Barenholtz' total assets were worth approximately $3,650,000. His stocks and bonds were worth approximately $3,000,000, of which amount $2,475,000

---

1. *Barenholtz v. United States,* No. 356–82T    (Cl.Ct. Mar. 4, 1985).

consisted of taxable securities and $525,000 consisted of tax-exempt securities.

Beginning in September 1970, and through 1977, Barenholtz owned and operated a book publishing business in Princeton, New Jersey. The business was conducted as a sole proprietorship under the name "The Pyne Press." In 1971, Pyne Press began to take out a series of loans from the First National Bank of Princeton (bank). Barenholtz signed the promissory notes. Barenholtz' loan balance totaled $487,000 at the end of 1973, and $567,000 at the end of 1974. The loans were fully repaid during the period from May 1975 through April 1977.

At first, the loans were either unsecured or secured by common stocks. Beginning in September 1973, Barenholtz, through his investment managers, sent tax-exempt bonds to the bank as collateral for the loans. Tax-exempt bonds valued at $425,000 were posted in 1973, and the remaining tax-exempt bonds valued at $100,000 were posted in 1974. The bank retained all the securities, including the tax-exempt bonds, until after the loans were repaid in full in 1977.

Barenholtz paid interest on the Pyne Press loans in each of the years 1971 through 1977 to the bank. He deducted the interest on his federal income tax return each year.

The Internal Revenue Service (IRS) examined Barenholtz' income tax returns for the years 1975, 1976, and 1977. For each of those years, the IRS concluded that his Pyne Press indebtedness was "indebtedness incurred or continued to purchase or carry" Barenholtz' tax-exempt bonds, within the meaning of section 265(2) of the Internal Revenue Code, which provides that no deduction shall be allowed for interest on such indebtedness. In computing Barenholtz' income tax liability, the IRS disallowed his claimed Pyne Press interest deduction in each year to the extent the deduction was equal to or less than the amount of tax-exempt income he received from his tax-exempt bonds.

Assessment of additional taxes for the years 1971, 1972, 1973, and 1974 was barred by the statute of limitations provided in section 6501(a) of the Internal Revenue Code (26 U.S.C.). For the years in issue, 1975, 1976, and 1977, Barenholtz claimed charitable contribution carryovers from the years 1971, 1972, 1973, and 1974. In addition, for the year 1975, he claimed a net operating loss carryover from 1974. In order to compute Barenholtz' correct tax liability for the years 1975, 1976, and 1977, the IRS had to compute his correct liability for the earlier years. Accordingly, the IRS also disallowed his Pyne Press interest deductions for the years 1971, 1972, 1973, and 1974. These disallowances resulted in upward adjustments to Barenholtz' 1971, 1972, 1973, and 1974 adjusted gross incomes. These upward adjustments in turn increased the allowable charitable contribution deduction for each of those years. This reduced his charitable contribution allowance carryover to the years 1975 through 1977, and accordingly increased his income for the years 1975 through 1977. The upward adjustment of Barenholtz' 1974 adjusted gross income also eliminated a 1974 net operating loss carried over from 1974 to 1975 and, accordingly, increased his income for 1975.

In addition to disallowing the interest deductions, the IRS disallowed certain deductions for investment and custodial fees claimed by Barenholtz on his 1975, 1976, and 1977 returns. The IRS also disallowed part of a deduction for obsolescence of a mailing list claimed on his 1976 return.

As a result of these various adjustments, the IRS determined that Barenholtz had additional income tax liability in the amounts of $7,093, $24,044, and $25,066, for the years 1975, 1976, and 1977, respectively. He paid these amounts, plus interest, and filed claims for refunds. After the claims were denied, he filed this refund action in the Claims Court.

Following a trial, the Claims Court delivered an oral opinion on the interest deduction issue. The court noted that section 265(2) applies to disallow interest on indebt-

edness only when there is a nexus between the indebtedness and the tax-exempt securities. It found that during the period before September 1973 when Barenholtz' tax-exempt bonds were not used as collateral for the Pyne Press loans, "there was not a sufficient nexus between the holding of the exempt securities and the conduct of the business." Therefore, section 265(2) did not apply to interest paid during that period. It further found that from the time when the tax-exempt bonds first were used as collateral, in September 1973, there was a sufficient nexus between the bonds and the loans. The court noted that the bonds could have been sold, but that "[t]he choice was made to keep the securities and use them as collateral for the loan, rather than to sell them." The trial judge concluded that interest deductions attributable to the portion of the loan secured by the tax-exempt bonds were disallowed under section 265(2). The trial court held that, for periods when the outstanding loan balance exceeded the amount of the bonds used as collateral, interest attributable to the portion of the loan balance secured by the bonds was not deductible. Any interest attributable to the excess loan balance was allowed to be deducted. The Claims Court's method of determining how much interest was deductible differed from the method which had been used by the IRS.

The court directed the parties to calculate the amount of any refund due Barenholtz pursuant to its ruling.

### B. *Computation of the Judgment.*

Prior to trial, the parties had agreed to settle two issues: (1) the investment and custodial fee deductions and (2) the mailing list deduction. The parties stipulated that Barenholtz would withdraw his claim for investment and custodial fee deductions, and that the Government would concede his claim for a mailing list deduction. At one point, the Government proposed to effectuate the settlement by dismissing the two settled issues from the case, and to process overpayment for these issues separately, in the amounts of $4,001 for 1976 and $1,179

for 1977. Barenholtz rejected the Government's proposal and insisted that the settlement of the two issues be incorporated into the judgment.

In their joint statement of facts and law, filed on November 26, 1984, the parties stated that they had stipulated to eliminate the two issues and that "[t]he judgment to be entered on the other issues in this case also shall set forth and incorporate the separate stipulation of the parties concerning their resolution of the [custodial fees and mailing list] issues." The actual stipulation was filed on January 28, 1985.

After the Claims Court's ruling of December 13, 1984, regarding the extent to which Barenholtz' interest deductions were allowable, it became apparent that for the years 1974 and 1975, he was subject to disallowances of claimed interest deductions in amounts ($61,691 and $47,570, respectively) that were greater than the amounts originally disallowed by the IRS ($37,597 for each year). The court found, however, that since bonds were not used as collateral in 1971, 1972, or part of 1973, Barenholtz was entitled to the entire amount of interest claimed for 1971 and 1972, and to most of the amount claimed for 1973. The amounts disallowed for 1976 and 1977 remained unchanged.

The parties could not agree on a judgment because they were unable to agree on the amount of disallowed interest deductions for 1974 and 1975 or on the effect of the stipulation regarding custodial fees and the mailing list. Barenholtz argued that the Government could not assert interest deduction disallowances in those years in excess of the amounts originally disallowed by the IRS. Barenholtz also argued that the Government had conceded an obligation to pay $4,001 for 1976 and $1,179 for 1977, relating to the Government's concession of the mailing list issue, and that the judgment must set forth the Government's alleged obligation to pay these amounts.

At a hearing held on February 28, 1985, the Claims Court ruled that the Government's computation was correct and that Barenholtz was not entitled to recover.

The court rejected his contention that additional disallowances could not be made for 1974 and 1975. The court stated that the issue was whether Barenholtz was entitled to a refund in any of the tax years in issue, 1975, 1976, and 1977. The court also concluded that the deduction allowed Barenholtz as a result of the Government's concession of the mailing list issue was offset by the additional interest deduction disallowances.

Barenholtz appeals. Jurisdiction of the Federal Circuit is based on 28 U.S.C. § 1295(a)(3) (1982).

### Loans Used To Carry Tax-Exempt Bonds

#### A. Section 265.

The controlling statute is section 265 of the Internal Revenue Code, which states no deduction shall be allowed for "[i]nterest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle." [2] The purpose of this provision is to prevent taxpayers from reaping a double tax benefit by receiving tax-exempt income from securities purchased or carried with borrowed money, and then claiming a deduction against their taxable income for the interest expense paid on the borrowed funds.[3]

The disallowance provision of section 265(2) is not activated solely by the existence of an indebtedness and the simultaneous holding of tax-exempt securities. Rather, section 265(2) applies only when the taxpayer's purpose in incurring or continuing an indebtedness is to purchase or carry tax-exempt securities. In general, this prohibited purpose is established by evidence of a sufficiently direct relationship or nexus between the indebtedness and the securities.[4]

Generally, when a taxpayer uses tax-exempt obligations as collateral for indebtedness, there is a sufficiently direct relationship between the indebtedness and the tax-exempt securities to prove the existence of the prohibited purpose.[5] There is no distinction between borrowing to buy tax-exempt bonds and borrowing against bonds already owned.[6]

Barenholtz' use of the tax-exempt bonds as collateral for the Pyne Press loans demonstrates the prohibited purpose. The Claims Court found "[t]he choice was made to keep the securities and use them as collateral for the loan, rather than to sell them." The Claims Court correctly applied section 265(2).

Barenholtz argues that he did not need to use the tax-exempt bonds for collateral, because his other assets would have been sufficient to provide ample collateral for the loans. He contends that because it was not necessary for him to post the tax-exempt bonds as collateral, there was a lack of nexus or prohibited purpose.[7] However, it is irrelevant whether Barenholtz could have used other assets as collateral. The fact that he used the tax-exempt bonds as collateral is direct evidence of the prohibited purpose.[8]

#### B. Exception for Compelling Nontax Reasons.

Barenholtz argues that his case falls within the exception to the general rule

2. 26 U.S.C. § 265(2) (1982).

3. *Denman v. Slayton,* 282 U.S. 514, 519–20, 51 S.Ct. 269, 270, 75 L.Ed. 500 (1931); *Illinois Terminal R.R. v. United States,* 179 Ct.Cl. 674, 375 F.2d 1016, 1021 (1967).

4. *Investors Diversified Servs., Inc. v. United States,* 575 F.2d 843, 847–48, 216 Ct.Cl. 192 (1978); *Phipps v. United States,* 515 F.2d 1099, 1102, 206 Ct.Cl. 583 (1975) (*Phipps II*); *Illinois Terminal,* 375 F.2d at 1021; *Wisconsin Cheeseman, Inc. v. United States,* 388 F.2d 420, 422 (7th Cir.1968).

5. *Wisconsin Cheeseman,* 388 F.2d at 422; *Phipps II,* 515 F.2d at 1102.

6. *Wisconsin Cheeseman,* 388 F.2d at 422.

7. The taxpayer has the burden of overcoming the presumption of correctness of the Commissioner's determination that the prohibited purpose existed. *Id.* at 423.

8. *Phipps II,* 515 F.2d at 1102.

that the use of tax-exempt securities as collateral is sufficient to establish the prohibited purpose. It applies only where (1) the taxpayer has a business purpose for the loan and (2) retention of the tax-exempt securities results from some compelling nontax reason.[9] The exception is not applicable here because Barenholtz had a business purpose but not a compelling nontax reason.

The exception for compelling nontax reasons applies where an entity in the business of attracting deposits, such as a bank or an investment company, is legally required to retain securities to meet reserve requirements.[10] In such a case, because of the existence of the deposits, liquidation of the securities would not result in a reduction of the taxpayer's indebtedness, i.e., the indebtedness is "so independent that it would not and could not be reduced or eliminated even if all the tax exempts were sold."[11] Similarly, courts have applied the exception where the taxpayer was compelled to accept tax-exempt securities as payments and the securities were not salable.[12] In the latter situation, the tax-exempt securities "could not be liquidated and, hence, the taxpayers had no alternative for supplying their cash needs but to borrow money."[13]

Here, Barenholtz demonstrated no compelling nontax reason for holding his tax-exempt bonds while incurring and continuing loans. Sale of his bonds would have eliminated his need for indebtedness, at least to the extent of the value of the bonds ($525,000); and he was subject neither to any legal requirement that he retain the bonds nor to any impediment to selling them.

### C. *Decision of the Claims Court.*

██ The Claims Court concluded that prior to the use of the bonds as collateral in

September 1973, there was not a sufficient nexus between Barenholtz' Pyne Press loans and the tax-exempt bonds. Accordingly, the court concluded that section 265(2) did not apply to his claimed deductions for interest paid prior to September 1973.

The court found that the use of the tax-exempt bonds as collateral for the loans, beginning in September 1973, created a sufficient nexus between the loans and the bonds so as to require disallowance of deductions for interest attributable to the portion of the loans secured by the tax-exempt bonds. For periods when the outstanding loan balance exceeded the amount of bonds used as collateral, the court allowed deductions for the interest attributable to the excess loan balance.

The Claims Court judgment is fully supported by the facts and by the law.

### *Computations Adopted by the Claims Court*

██ The Government was barred by the statute of limitations, section 6501(a),[14] from making any deficiency assessments against Barenholtz for the years 1971 through 1974. Barenholtz argues that the Government was also barred from making upward adjustments to his income for those years, resulting in decreased business loss and charitable contribution carryovers to the years 1975, 1976, and 1977. The adjustments resulted in an increase in Barenholtz' tax liability for 1975, 1976, and 1977, the 3 years in issue here.

Barenholtz' argument is unsupported by the law. Section 6501(a) bars assessments, not calculations, and no assessments were made for the years 1971 through 1974. It is well settled that the IRS and the courts may recompute taxable income in a closed

**9.** *Investors Diversified,* 575 F.2d at 848–55.

**10.** *Id.* at 852–55; *New Mexico Bancorporation v. Commissioner,* 74 T.C. 1342, 1351–57 (1980).

**11.** *Investors Diversified,* 575 F.2d at 853.

**12.** *Sioux Falls Metal Culvert Co. v. Commissioner,* 26 B.T.A. 1324, 1325–28 (1932); *R.B. George*

*Mach. Co. v. Commissioner,* 26 B.T.A. 594, 594–98 (1932).

**13.** *Illinois Terminal,* 375 F.2d at 1021.

**14.** 26 U.S.C. § 6501(a) (1982).

year in order to determine tax liability in an open year.[15]

The Claims Court adopted computations which subjected Barenholtz to additional disallowances, beyond those originally determined by the IRS, in the amounts of $24,094 and $9,973 for the years 1974 and 1975, respectively. Barenholtz argues that the court could not make the additional disallowances because the amounts were not pleaded in the Government's answer. The court was correct in rejecting this argument because the issue was whether Barenholtz was entitled to a refund in any of the 3 years in question. In an action for refund of taxes paid, the burden is on the taxpayer "to show not merely that the assessment is erroneous but also the amount to which he was entitled."[16] The issue of the correct amount of Barenholtz' interest deductions for 1974 and 1975 was properly before the court in order to determine his correct tax liability for the years 1975, 1976, and 1977. The court correctly held that Barenholtz was subject to increased interest deduction disallowances for the years 1974 and 1975.

Finally, Barenholtz asserts that the Government "acknowledged its undertaking to repay $4,001 for 1976 and $1,179 for 1977 in settlement of the mailing list issue" and he argues that the Claims Court should have entered judgment "separately," awarding Barenholtz this $5,180 amount. The Claims Court found that the parties agreed only that the judgment should reflect the Government's concession that Barenholtz was entitled to his claimed mailing list deduction. Accordingly, the court rejected Barenholtz' argument, holding that the concession of this issue must be incorporated into the determination whether he was entitled to a refund in any of the 3 years in issue. The 1976 mailing list deduction was "canceled out" by the court's additional disallowances of interest deductions for 1974 and 1975 (which reduced the amount of Barenholtz' charitable contribution carryovers to 1976).

Accordingly, the trial court correctly held that Barenholtz "failed to establish an entitlement to a refund" for any of the 3 years in issue, 1975, 1976, and 1977.

### Conclusion

The judgment of the Claims Court is affirmed.

AFFIRMED.

---

**15.** *Springfield St. Ry. v. United States,* 312 F.2d 754, 757–59, 160 Ct.Cl. 111 (1963).

**16.** *Helvering v. Taylor,* 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935).