DAVIS, Circuit Judge.
 

 This tax refund case comes to us from the United States Claims Court which held
 
 *582
 
 for the Government on cross-motions for summary judgment. We affirm.
 

 I.
 

 Background
 

 The hard facts were stipulated and are not in dispute. In 1974 and 1975, plaintiff-appellant, taxpayer E.F. Hutton Group, Inc., filed consolidated income tax returns as the parent company of E.F. Hutton and Company, Inc.,
 
 [1]
 
 a corporation engaged in the securities brokerage and investment banking business. During this period, E.F. Hutton’s business, in addition to buying and selling stocks, bonds and commodities as both a broker and dealer, included holding tax-exempt obligations to be resold in underwriting syndicates and in the secondary market. The average monthly values of E.F. Hutton’s tax-exempt obligations in 1974 and 1975 (excluding certain tax-exempt obligations held on deposit with commodity clearing corporations) were $23,-000. 000 and $16,000,000, respectively. In percentage figures, these tax-exempt obligations represented approximately 5.25% of the average monthly value of E.F. Hutton’s total assets in 1974 ($438,348,000) and 3.09% of the average monthly value of E.F. Hutton’s total assets in 1975 ($518,217,000).
 

 During 1974 and 1975, E.F. Hutton’s indebtedness included bank indebtedness secured by the pledge of customers’ securities, bank indebtedness secured by tax-exempt obligations, indebtedness to other broker-dealers, and subordinated indebtedness.
 
 [2]
 
 In 1974, E.F. Hutton incurred an interest expense of $2,832,902 on its total subordinated indebtedness of $24,087,000. The following year, E.F. Hutton’s interest expense was $2,680,674 based on a total subordinated indebtedness of $24,140,000.
 

 On its consolidated federal income tax returns for 1974 and 1975, taxpayer deducted in full the interest it paid on its subordinated indebtedness. Acknowledging that a portion of interest paid on its other debt was subject to partial disallowance under 26 U.S.C. § 265(2), E.F. Hutton calculated the disallowed portion using the formula provided in Rev.Proc. 72-18, 1972-1 Cum. Bull. 740. Following an audit, the Commissioner determined that interest on subordinated debt was also subject to partial disallowance under the formula and issued to E.F. Hutton a notice of deficiency for 1974 and 1975 taxes. Appellant paid the deficiencies and, after the proper steps, filed suit in the Claims Court seeking refunds of income tax overpayments in the amounts of $249,598 and $119,183 for 1974 and 1975, respectively.
 

 The Claims Court (Judge Wiese), ruling in favor of the United States, found that “a principal purpose for a portion of [E.F. Hutton’s] borrowing was to facilitate ... ownership of tax exempt securities.” Accordingly, the court held that interest on E.F. Hutton’s subordinated debt was subject to partial disallowance under § 265(2). In addition, the court upheld the Commissioner’s adjustment of E.F. Hutton’s calculation of tax liability under the formula provided in Rev.Proc. 72-18.
 

 On this appeal, appellant assigns as error both the determination that interest on its subordinated debt is subject to partial disallowance and the manner in which the Claims Court applied the formula.
 

 II.
 

 Deductibility of Interest Paid on Subordinated Indebtedness
 

 Section 265(2) of the Internal Revenue Code of 1954 provides (in pertinent part): “No deduction shall be allowed for ... [i]nterest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle.”
 
 [3]
 
 26
 
 *583
 
 U.S.C. § 265(2) (1954). To disallow a deduction under § 265(2), it must be determined, as the Claims Court held, that the interest involved pertains to a borrowing that was undertaken for the purpose of acquiring or continuing to hold tax-exempt securities. E.F. Hutton argues, however, that, instead of having the statutorily proscribed purpose, taxpayer incurred and continued its subordinated indebtedness solely for the purpose of increasing its net capital which, under Rules 325 and 326 of the New York Stock Exchange, governed the permissible level of its business operations.
 
 [4]
 

 The Claims Court properly examined E.F. Hutton’s borrowing “in light of all the attendant circumstances.”
 
 E.F. Hutton v. United States,
 
 No. 579-83T, slip op. at 2 (Cl.Ct. January 22, 1986) (order).
 
 See Investors Diversified Services, Inc. v. United States,
 
 575 F.2d 843, 848 (Ct.Cl.1978). In reaching its legal conclusions, the court relied upon the following undisputed facts:
 

 (1) E.F. Hutton undertook the subordinated indebtedness to augment its capital structure, thereby enhancing its ability to respond to opportunities for business growth. However, the indebtedness was not incurred to remedy an existing or threatened violation of New York Stock Exchange capital requirements;
 

 (2) subordinated indebtedness represented a more or less constant feature of E.F. Hutton’s capital structure; and
 

 (3) in its capacity as a broker-dealer engaged in securities transactions on all major securities and commodities exchanges, E.F. Hutton regularly held tax-exempt obligations purchased for resale. Although the dollar amounts of these purchases varied from month to month depending upon market conditions, trading in tax-exempts represented a regular and continuous part of E.F. Hutton’s everyday business.
 

 Because we agree with the Claims Court that there are no genuine issues as to any material fact, we must uphold its summary judgment unless we are persuaded that E.F. Hutton is entitled to judgment as a matter of law. We turn then to the Claims Court’s legal conclusion that E.F. Hutton’s subordinated indebtedness was, at least in part, incurred to facilitate ownership of tax-exempt securities. Simply stated, the court held that, since E.F. Hutton’s regular subordinated borrowings increased its capacity to carry tax-exempts, and because E.F. Hutton also regularly dealt in tax-exempts, E.F. Hutton necessarily borrowed partly for the purpose of carrying tax-exempts. This was the Claims Court’s reasoning:
 

 Given the constancy of E.F. Hutton’s reliance on subordinated indebtedness to augment its capital structure and the simultaneous regularity of its purchasing of tax-exempt securities, it must be concluded that a principal purpose for a portion of the company’s borrowing was to facilitate the purchasing or continuing ownership of tax-exempt securities. To put it another way, where the object of a borrowing is to enhance the company’s financial ability to expand its overall business and that business predictably includes the acquisition of tax-exempt securities in a regular and on-going fashion, then it follows that, for a portion of the borrowing, the principal purpose is the acquisition of tax-exempt securities.
 

 E.F. Hutton v. United States,
 
 No. 579-83T, slip op. at 3 (Cl.Ct. January 22, 1986) (order).
 

 Of course, the ultimate issue is whether taxpayer’s subordinated indebtedness was “incurred or continued to purchase or carry” its tax-exempt obligations. One of this court’s predecessors recognized that
 
 *584
 
 “the mere contemporaneous existence of the indebtedness and the ownership of tax-exempt obligations does not
 
 ipso facto
 
 establish the barred purpose within the meaning of section 265(2).”
 
 Investors Diversified Services, Inc., v. United States,
 
 216 Ct.Cl. 192, 575 F.2d 843, 848 (1978),
 
 supra,
 
 citing
 
 Wisconsin Cheeseman, Inc. v. United States,
 
 388 F.2d 420, 422 (7th Cir.1968). Under
 
 Investors Diversified Services,
 
 as we have already noted, “where the issue is disputed there should always be an inquiry, more-or-less particularized, into the connection and relationship between the tax-exempts and the indebtedness so as to discover whether in fact the taxpayer used borrowed funds for the primary purpose of purchasing or carrying those securities.” 575 F.2d at 848.
 

 Taxpayer urges us to draw a distinction between the purpose for which it incurred the subordinated indebtedness and the actual use of the borrowed funds because “use of the proceeds does not establish the purpose for which the indebtedness was incurred.” Under E.F. Hutton’s reading of § 265(2), the fact that some of the borrowed funds are ultimately used to purchase or carry tax-exempt obligations does not establish or suggest the purpose for which the indebtedness was incurred. Because appellant says that its purpose for incurring the indebtedness was simply to provide net capital to satisfy the New York Stock Exchange regulatory requirements, it contends that the ultimate use of borrowed funds to purchase or carry tax-exempts should not trigger a § 265(2) deduction disallowance.
 

 We reject as artificially narrow E.F. Hutton’s interpretation of § 265(2). The literal language of the statute prohibits the deduction of interest on indebtedness “incurred
 
 or continued
 
 to purchase
 
 or carry
 
 ” tax-exempts. (Emphasis added.) Although it may be true that use of the proceeds of the borrowing does not, in itself, establish the purpose of the borrowing, the statute mandates a broader inquiry. The fact that E.F. Hutton may not have
 
 incurred
 
 the subordinated indebtedness specifically
 
 to purchase
 
 tax-exempts is not dispositive. But where trading in tax-exempts and the incurring of long-term indebtedness both represent a regular, continuous, routine, and substantial part of taxpayer’s daily business, taxpayer’s decision to
 
 continue
 
 (rather than retire) its subordinated indebtedness undoubtedly facilitates its ability to
 
 carry
 
 tax-exempts. There is a clear correlation-and-parallelism which cannot be disregarded—a continued, solid tie between the incurring of subordinated indebtedness and the purchase and maintenance of tax-exempts.
 
 [5]
 
 In these circumstances, § 265(2) operates to disallow the deduction of interest on the indebtedness.
 

 As the Claims Court noted,
 
 Leslie v. Commissioner,
 
 413 F.2d 636 (2d Cir.1969),
 
 cert. denied,
 
 396 U.S. 1007, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970) and
 
 Bradford v. Commissioner,
 
 60 T.C. 253, 260 (1973) are to the same effect. In
 
 Leslie v. Commissioner,
 
 Bache & Co., a brokerage firm, routinely borrowed from banks to finance its operations. Of its average total bank indebtedness of $78 million, Bache incurred more than $3 million of subordinated indebtedness. 50 T.C. 11, 15 (1968). Bache’s operations were identical to E.F. Hutton’s operations in two respects. First, a relatively small, but nonetheless quite substantial, portion of Bache’s business included holding tax-exempt securities. Second, because the proceeds of Bache’s loans were commingled with the firm’s other funds, it was impossible to trace loan proceeds to any particular use. Notwithstanding the inability directly to trace borrowed funds to tax-exempts, the Second Circuit disallowed a portion of Bache’s interest expense under § 265(2). The court noted that “Bache borrowed money for the purpose of conducting its business, including the holding of some tax-exempt securities____” 413 F.2d at 639. Moreover, “since the use of the bor
 
 *585
 
 rowed funds cannot be traced, it is reasonable to allocate them to all the business purposes of Bache.”
 
 Id.
 
 According to the court, “[t]here was a direct relationship between the continuance of the debt and the carrying of the tax-exempt securities.”
 
 Id.
 
 at 641. E.F. Hutton’s fine-tuned attempts to distinguish
 
 Leslie
 
 are all unpersuasive. In particular, the fact that E.F. Hutton’s subordinated borrowings were made on a long-term basis rather than daily is irrelevant and does not compel or push toward a different result.
 

 On virtually identical facts, the Tax Court disallowed a portion of a brokerage firm’s interest expense in
 
 Bradford v. Commissioner,
 
 60 T.C. 253 (1973). The
 
 Bradford
 
 taxpayers argued that they borrowed for the purpose of maintaining bank balances necessary to carry on their business which included dealing in both taxable securities and tax-exempt bonds.
 
 Id.
 
 at 259. The court observed that a brokerage firm which dealt exclusively in tax-exempt securities would not be entitled to deduct the interest paid on its recurring debt, and that it would be unjust to allow taxpayer “to escape the strictures of section 265(2)” simply by dealing in
 
 both
 
 taxable securities and tax-exempt bonds. Id.
 
 [6]
 

 Finally, the Claims Court’s decision is entirely consistent with the guidelines published by the Internal Revenue Service for the application of § 265(2). Rev.Proc. 72-18 states in pertinent part as follows:
 

 [wjhere indebtedness is incurred or continued for the general purpose of carrying on a brokerage business which includes the purchase of both taxable and tax-exempt obligations, and the use of the borrowed funds cannot be directly traced, it is reasonable to infer that the borrowed funds were used for all the activities of the business which include the purchase of tax-exempt obligations. Accordingly, section 265(2) of the Code is • applicable in such circumstances.
 

 Rev.Proc. 72-18 § 5.03, 1972-1 Cum.Bull. 740, 742.
 

 III.
 

 Calculation of Tax Liability Under the Formula in Rev.Proc. 72-18
 

 In determining what portion of E.F. Hutton’s interest deductions to disallow under § 265(2), the Claims Court applied the method set forth in Rev.Proc. 72-18. Under that directive, the amount of interest deduction disallowed under § 265(2) is calculated using the following formula:
 

 Interest Deductions Subject to Partial Disallowance Under § 265(2)
 

 x
 

 Amount of Taxpayer’s Tax_Exempt Obligations_
 

 Taxpayer’s total assets less amount of indebtedness the interest on which is not subject to disallowance.
 

 Obviously, the greater the amount of indebtedness that is subtracted from the denominator of the above fraction, the smaller the fraction’s denominator, the greater the fraction, and the greater the amount of interest deduction disallowed under § 265(2). E.F. Hutton claims as error the trial court’s decision to reduce the fraction’s denominator by an amount equal to the liabilities included in credits 1 and 3 through 9 of Rule 15c3-3 of the Rules of the Securities
 
 *586
 
 and Exchange Commission.
 
 [7]
 
 These liabilities were not incurred for the purpose of purchasing and holding for resale any type of security but rather flowed directly from E. F. Hutton’s activities with customers.
 

 In arguing against subtraction of these liabilities from the denominator, taxpayer relies primarily on the language of Rev.Proc. 72-18. As noted above, Rev. Proc. 72-18 requires subtraction from the denominator of any “indebtedness the interest on which is not subject to disallowance.” Because E.F. Hutton did not pay any interest on these liabilities, it claims that this particular indebtedness is not covered by the literal terms of the Revenue Procedure. The Claims Court stated, however, and we agree that Rev.Proc. 72-18 suffers from a “lack of clarity” with respect to whether an indebtedness must generate an interest expense in order to qualify for subtraction. We cannot condemn as legal error the trial court’s decision to effectuate the purpose of the formula at some expense to its language read precisely. “While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words.”
 
 Peirce v. Van Dusen,
 
 78 F. 693, 696 (6th Cir.1897) (Harlan, Circuit Justice).
 

 Judge Wiese properly held:
 

 [t]he purpose of the allocation formula is to apportion, between tax-exempt obligations and other business assets, that interest expense which stems from borrowings whose use cannot be traced to specific purchases in either investment category. The premise is that where such direct tracing is not possible, all business assets are presumed to have contributed equally to the interest burden. Since the formula is concerned with the apportionment of interest expense associated with borrowings traceable only generally (rather than specifically,
 
 i.e.,
 
 by asset and dollar amount), to taxable and tax-exempt assets, it necessarily excludes the amount of any borrowing the interest on which would not be disallowed in any event.
 

 E.F. Hutton v. United States,
 
 No. 579-83T, slip op. at 6 (Cl.Ct. January 22, 1986) (order).
 

 In reducing the fraction’s denominator by an amount equal to the liabilities included in credits 1 and 3 through 9 of Rule 15c3-3, the court properly elected to effectuate the plain purpose of Rev.Proc. 72-18 rather than contradict the objective of the formula by resort to a dry literalism.
 

 AFFIRMED.
 

 [1]
 

 . For the purposes of this opinion, both the E.F. Hutton Group, Inc. and E.F. Hutton and Company, Inc. will be referred to as "E.F. Hutton.”
 

 [2]
 

 . As its name suggests, subordinated indebtedness is subordinate to the claims of customers and other creditors.
 

 [3]
 

 . The provision is designed to prevent a taxpayer from reaping a double tax benefit by taking a
 
 *583
 
 deduction for interest where the income from investments supported by the debt is exempt from federal taxation.
 
 See, e.g., Denman v. Slayton,
 
 282 U.S. 514, 519-20, 51 S.Ct. 269, 270, 75 L.Ed. 500 (1931);
 
 Barenholtz v. United States,
 
 784 F.2d 375, 379 (Fed.Cir.1986).
 

 [4]
 

 . Under New York Stock Exchange Rules 325 and 326, as in effect in 1974 and 1975, a member firm, such as E.F. Hutton, could be (a) suspended or expelled if its aggregate indebtedness exceeded 15 times its net capital; (b) required to reduce its business if the ratio exceeded 12 to 1; and (c) prohibited from expanding if the ratio exceeded 10 to 1.
 

 [5]
 

 . The Court of Claims decision in
 
 Investors Diversified Services, Inc., supra,
 
 was very different. That ruling rested on the distinct and marked separation between the two parts of that taxpayer’s business (see 575 F.2d at 852-55)—a separation wholly absent here.
 

 [6]
 

 . E.F. Hutton stresses a purported analogy to the so-called “bank exception” which has been read into § 265
 
 (see Investors Diversified Services, Inc., supra,
 
 575 F.2d at 851-52, 853). As Judge Tannewald observed in
 
 Bradford, supra,
 
 60 T.C. at 259, "there are obvious and significant differences between banks and brokerage firms, and between the relationships between banks and their depositors and brokerage houses and their customers.” We note, too, that § 902 of the Tax Reform Act of 1986 (P.L. 99-514) deals extensively, by amendment of § 265, with interest expense of financial institutions.
 

 [7]
 

 . Rule 15c3-3 is a customer protection rule, the basic thrust of which is to segregate a broker-dealer’s brokerage business from other firm activities. The Rule requires, among other things, that a broker-dealer place in escrow any excess in amounts owed to customers over amounts receivable as a result of transactions in behalf of customers. This so-called "reserve” requirement is determined by a formula comprised of nine credit items (representing the various types of liabilities of a broker-dealer to his customer) and three debit items (representing the various types of receivables arising out of transactions conducted in behalf of customers).