875 F.2d 293
 63 A.F.T.R.2d 89-1325, 89-1 USTC P 9327
 DILLON, READ & CO., INC., Dillon, Read & Co., Dillon, Read
Overseas Corp., Dillon, Read Real Estate Inc. and
Nassau Associates, Inc., Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 89-1001.
 United States Court of Appeals,
Federal Circuit.
 May 16, 1989.
 
 John V. Thornton, Whitman & Ransom, New York City, for plaintiffs-appellants. George J. Noumair and Michael T. Kiesel, Whitman & Ransom, of New York City, were on the brief, for plaintiffs-appellants.
 Calvin C. Curtis, Dept. of Justice, Washington, D.C., for defendant-appellee. With him on the brief were James I. K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen and Richard Farber. William S. Rose, Jr., Dept. of Justice, Washington, D.C., of counsel.
 Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.
 NICHOLS, Senior Circuit Judge.
 
 
 1
 Dillon, Read & Co. Inc. (Dillon, Read) and Affiliates appeal from the judgment of the United States Claims Court, Dillon, Read & Co. Inc. v. United States, 15 Cl.Ct. 246 (1988), granting the United States' motion for summary judgment. We vacate and remand.
 
 I. Background
 
 2
 This is one more of the now lengthy series of tax cases in the lower federal courts dealing with a belief on the part of the Internal Revenue Service (IRS) that the taxpayer has claimed an interest deduction for cost it has incurred in carrying tax-exempt securities. The taxpayer, Dillon, Read,[1] is an investment banking firm which acts as a broker and dealer in stocks and securities. Dillon, Read makes a profit, in part, by buying securities and selling them to customers.
 
 
 3
 In the course of its business, Dillon, Read incurs various expenses, such as salaries, rent, and the purchase of securities, among other things. Dillon, Read borrows funds when its expenses exceed internally available funds. It owns tax exempts, as stock in trade, just as it owns securities whose fruits are taxable.
 
 
 4
 When faced with the decision of whether to borrow funds, Dillon, Read does not base its decision on the availability of capital which it could raise through the sale of the securities it holds in inventory to persons other than customers. So, likewise, the decision of whether to increase the inventory of securities is not based on the availability of funds. Thus, the decision to purchase securities and the decision to borrow funds are segregated functions.
 
 
 5
 Once the decision to purchase securities is made, internal funds are used if available and borrowed funds are used if needed. The borrowed funds are usually collateralized by the securities (taxable and tax-exempt) which Dillon, Read holds for ultimate sale to its customers. Because the borrowed funds are commingled with Dillon, Read's other funds, it is not possible to attribute the proceeds of any one loan to a specific purpose; likewise, it is not possible to tie any one security which collateralizes a loan to a specific purpose. Thus, the decision of which securities to use as collateral is wholly removed from the need for which the loan was incurred, a need which cannot be specified other than to say it was for the general business purposes of Dillon, Read. Disregarding, as we must, a belated attempt by Dillon, Read to supplement the record, we see nothing in it to support any inference that collateralizing any security removes it from availability as stock in trade, and we disregard, too, a belated attempt by the government to show the contrary.
 
 
 6
 Section 265 of the Internal Revenue Code[2] (I.R.C. or Code) provides in pertinent part:
 
 
 7
 No deduction shall be allowed for--
 
 
 8
 (2) Interest
 
 
 9
 Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle * * *.
 
 
 10
 This statute was construed in the celebrated case of Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420 (7th Cir.1968), celebrated at least to tax aficionados. The Cheeseman case involved a taxpayer, Cheeseman, who was in the business of packaging fancy cheeses for sale as Christmas gifts. After the cash-rich months of its seasonal business, Cheeseman purchased tax-exempt municipal bonds. During the cash-poor months, Cheeseman used the municipal bonds as collateral for short-term bank loans, the proceeds of which were used to meet the business' needs for working capital. The Cheeseman court decided that the underlying reason for the short-term loans was to carry tax-exempt obligations, and therefore section 265(a)(2) disallowed a deduction for the interest expenses incurred for the short-term loans.
 
 
 11
 The case of Leslie v. Commissioner, 413 F.2d 636 (2d Cir.1969), involved the investment banking firm of Bache & Co., (Bache) a firm in the same line of business as Dillon, Read. Bache borrowed money in much the same fashion as does Dillon, Read. That is, the decision to borrow funds was not made on the basis of the availability of securities held in inventory, and borrowed funds were commingled with other funds. Thus, borrowed funds could not be traced to a specific purpose.
 
 
 12
 Approximately one percent of the securities held by Bache were tax-exempt securities, although none of the tax-exempt securities were used as collateral for loans. Bache was unable to trace its interest expenses to specific activities or purchases, and it simply deducted all of its interest expenses. The Leslie court held that I.R.C. Sec. 265(a)(2) disallows a deduction for that portion of interest expenses equivalent to the portion of Bache's total assets made up of tax-exempt securities. Thus, if one percent of Bache's total assets were tax-exempt securities, Bache could not deduct one percent of its interest expenses.
 
 
 13
 We have considered rather numerous decisions by our predecessor the old Court of Claims dealing with section 265(a)(2), Investors Diversified Services, Inc. v. United States, 575 F.2d 843, 216 Ct.Cl. 192 (1978); Phipps v. United States, 515 F.2d 1099, 206 Ct.Cl. 583 (1975); Phipps v. United States, 414 F.2d 1366, 188 Ct.Cl. 531 (1969); Illinois Terminal R.R. v. United States, 375 F.2d 1016, 179 Ct.Cl. 674 (1967), and by this court, E.F. Hutton Group, Inc. v. United States, 811 F.2d 581 (Fed.Cir.1987) and Barenholtz v. United States, 784 F.2d 375 (Fed.Cir.1986).
 
 
 14
 We have applied the Leslie formula in E.F. Hutton, supra. Dillon, Read followed the approach of the Leslie case and did not deduct that portion of its total interest expenses equivalent to the percentage of its total assets which are tax-exempt obligations. The IRS audited Dillon, Read's returns for 1974-1977 and determined that the interest deductions taken in those years were overstated. According to the IRS, the interest expense for loans collateralized with tax-exempt securities should be disallowed under the Cheeseman holding; the remaining interest expenses should be allocated according to the Leslie holding. The total disallowance is the Cheeseman disallowance plus the amount disallowed per the Leslie allocation.
 
 
 15
 Dillon, Read paid the deficiencies assessed by the IRS and filed suit in the Claims Court to recover the taxes paid. On motion for summary judgment, Dillon, Read sought a determination it terms "the Cheeseman corollary." The Cheeseman corollary proposes that if interest on loans collateralized with tax-exempt obligations is conclusively nondeductible, then interest on loans which are collateralized with taxable obligations is conclusively deductible. Under this theory, the total disallowance would be the Cheeseman disallowance unaugmented by the Leslie allocation. The Claims Court denied the motion, Dillon, Read & Co. Inc. v. United States, 11 Cl.Ct. 529 (1987), explaining that the proceeds of loans collateralized with taxable securities can be used to purchase tax-exempt obligations, a prohibited purpose under section 265(a)(2). For this reason, interest expenses for loans collateralized with taxable securities are not conclusively deductible.
 
 
 16
 On cross-motions for summary judgment, Dillon, Read reverted to the approach initially followed on its tax returns whereby the Leslie allocation is applied to total interest expenses (the pure Leslie approach), and the IRS pursued its combined Leslie/Cheeseman approach. The Claims Court granted the government's motion for summary judgment. On appeal, Dillon, Read presses the pure Leslie approach, and as a secondary alternative, it presses the Cheeseman corollary.
 
 II. Issues
 
 17
 (A) Whether interest expenses for loan proceeds not traceable to the purchase or carrying of tax-exempt obligations should be conclusively deductible or nondeductible according to the loans' collateralization.
 
 
 18
 (B) Whether interest expenses for loan proceeds not traceable to the purchase or carrying of tax-exempt obligations should be allocated proportionally among all the uses of the taxpayer without regard to the loans' collateralization.
 
 
 19
 The judgment appealed from was rendered on cross-motions for summary judgment. The parties have stipulated to the material facts; therefore we review the judgment solely for its correctness as a matter of law. Kircher v. United States, 872 F.2d 1014, 1018 (Fed.Cir.1989).
 
 III. Discussion
 
 20
 As a preliminary matter, we note that neither party argued at trial or on appeal that jurisdiction is barred by the variance doctrine, an issue raised sua sponte by the Claims Court, i.e., Dillon, Read did not consistently maintain throughout the history of this case that the Leslie formula governed. Rather, at one time it urged its "Cheeseman corollary." We see no error in the Claims Court's treatment of this issue and need not add to that court's discussion of it. Dillon, Read, 15 Cl.Ct. at 250.
 
 A. The Cheeseman Corollary
 
 21
 We are in agreement with the Claims Court that collateralization of loans in part with taxable obligations is not conclusive evidence that the taxpayer lacked a prohibited purpose. As the Claims Court explained, collateralization with taxable securities does not prohibit the loan proceeds from also being used to purchase tax-exempt obligations.
 
 B. The Combined Leslie/Cheeseman Approach
 
 22
 The central issue in this case is the categorization of certain interest expenses as deductible or nondeductible. Section 265(a)(2) provides that interest expenses used to purchase or carry tax-exempt obligations are nondeductible. In this case, as in many, the debt proceeds are fungible and cannot be traced to a specific use. The taxpayer does carry and purchase tax-exempt obligations, but we cannot say whether it does so with the borrowed funds. Not knowing the use to which the borrowed funds are put, we must adopt some fiction to determine the proper categorization, unless we are to reject the disallowance altogether, though even taxpayer accepts it so far as based on the Leslie formula.
 
 
 23
 Dillon, Read would have us adopt the fiction of the Leslie decision that the interest expenses were borne for a representative share of all of the taxpayer's assets, taxable and tax-exempt alike.
 
 
 24
 The IRS agrees on applying the Leslie fiction, but urges we also adopt the Cheeseman fiction that the proceeds of the loans collateralized with tax-exempt securities were used exclusively for the prohibited purpose of carrying those tax-exempt securities. Under this theory, the interest expenses for the loans collateralized with tax-exempt securities are wholly disallowed. The remaining interest expenses are allocated proportionately among Dillon, Read's taxable and tax-exempt assets using the Leslie formula. To avoid a double disallowance, the assets used to calculate the Cheeseman disallowance are not included in the assets used to calculate the Leslie allocation.
 
 
 25
 A mathematical summary of the two methods is as follows:
 
 
 26
 Both methods allow deduction of a pro rata share of the interest incurred for loans not collateralized with tax-exempt obligations. The IRS method, however, disallows all of the interest expense of loans collateralized by tax-exempt securities, whereas the Dillon, Read method disallows only a portion of the interest expense for such loans. Thus, the fundamental disagreement between the parties centers around treatment of the interest expenses for loans collateralized by tax-exempt securities. Both parties' theories are inconsistent with the literal language of I.R.C. Sec. 265(a)(2), because neither refers to or employs any means of relating the interest expense to Dillon, Read's actual intent in incurring indebtedness. Dillon, Read bears the burden of overcoming the presumption of correctness that attaches to the Commissioner's determination that the prohibited purpose existed. Barenholtz v. United States, 784 F.2d 375, 379 n. 7 (Fed.Cir.1986).
 
 
 27
 The starting point in every case involving construction of a statute is, or ought to be, the language itself. Commissioner v. Engle, 464 U.S. 206, 214, 104 S.Ct. 597, 603, 78 L.Ed.2d 420 (1984); Neptune Mutual Assoc., Ltd. of Bermuda v. United States, 862 F.2d 1546, 1549 (Fed.Cir.1988). Here, the language of the statute is unhelpful, as it determines deductibility according to the use of the loan proceeds. We do not know the use of the loan proceeds and therefore cannot apply the statute's literal language. We turn then to the legislative history to determine whether the Congress expressed any intention with regard to the issue before us. E.g., Reid v. Dept. of Commerce, 793 F.2d 277, 281 (Fed.Cir.1986). Section 265(a)(2) of the Revenue Act of 1954, as amended, is substantially unchanged from enactment of its predecessor statute, section 234(a)(2) of the Revenue Act of 1918, Pub.L. No. 254, ch. 18, Sec. 234(a)(2), 40 Stat. 1057, 1077. Reenactment of the statute from 1918 through the years at issue uncovers no expressed congressional intent with regard to treatment of untraceable interest expenses.
 
 
 28
 The IRS has issued Revenue Procedure 72-18, 1972-1 C.B. 740. Under Section 3, "General Rules," it states:
 
 
 29
 Direct evidence of a purpose to carry tax-exempt obligations exists where tax-exempt obligations are used as collateral for indebtedness. "[O]ne who borrows to buy tax-exempts and one who borrows against tax-exempts already owned are in virtually the same economic position. Section 265(2) makes no distinction between them." Wisconsin Cheeseman[, Inc.] v. United States, 388 F.2d 420, 422 ( [7th Cir.] 1968).
 
 
 30
 Sections 4 and 6 provide specific guidelines for individuals and guidelines for corporations that are not dealers in tax-exempt obligations, respectively. Each of these sections sets out criteria for determining if the taxpayer's obligations were incurred or continued to purchase or carry tax-exempt obligations. Significantly, sections 4 and 6 both provide that their criteria apply only in the absence of direct evidence such as that described in section 3 (collateralization of loans with tax-exempt obligations).
 
 
 31
 Section 5 concerns dealers in tax-exempt obligations and does not limit its application to situations involving an absence of direct evidence.
 
 
 32
 Where * * * the borrowed funds cannot be directly traced, it is reasonable to infer that the borrowed funds were used for all the activities of the business which include the purchase of tax-exempt obligations. Accordingly, section 265(2) of the Code is applicable in such circumstances. See Commissioner v. Leslie, 413 F.2d 636 ( [2d Cir.] 1969), certiorari denied, 396 U.S. 1007 [90 S.Ct. 564, 24 L.Ed.2d 500] (1970).
 
 
 33
 Rev.Proc. 72-18, 1972-1 C.B. 740 Sec. 5.03. Thus, sections 4 and 6 refer expressly to the direct evidence test of Cheeseman, whereas section 5 relating to broker-dealers relies upon tracing to determine if there is a prohibited purpose. While the rejection of the Cheeseman test for use with broker-dealers is inferential, we think it is nonetheless clear. In cases of statutory construction, the intention of the draftsman is deduced from a view of every material part of the statute. E.g., United States v. Morton, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). Applying that maxim to the Revenue Procedure here at issue, we note that the Revenue Procedure expressly incorporates the Cheeseman rule in the sections immediately preceding and following that applicable to broker-dealers. If the Cheeseman rule was intended to apply to broker-dealers, it would have been sensible to repeat the reference to section 3 when discussing the rules for broker-dealers. The logical interpretation of the Revenue Procedure is that broker-dealers are not subject to the Cheeseman rule.
 
 
 34
 Having determined that the cited Revenue Procedure adopts the view espoused by Dillon, Read, we now decide whether to follow the position of the Revenue Procedure. Revenue Procedures are published in the IRS' Cumulative Bulletin which states in its Introduction, "[p]rocedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations, but they may be used as precedents." Although Revenue Procedures are not given the effect of Treasury Regulations, which are to be sustained unless disharmonious with the controlling statute, e.g., United States v. Vogel Fertilizer Co., 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982), they are official statements of the IRS on procedural matters and are published to promote uniform application of the Internal Revenue Laws. See 26 C.F.R. Sec. 601.601(d)(2)(i)(b); Rev. Proc. 86-15, 1986-1 CB 544 Sec. 3.02. The IRS may revoke or modify those Revenue Procedures which it no longer deems correct. 26 C.F.R. Sec. 601.601(d)(1); 6 CCH Internal Revenue Manual (Admin.) ch. (11)152(2)-(8), at 35,107. Therefore, failure to revoke gives rise to a reasonable expectation on the part of the taxpayer that the statements made in a published Revenue Procedure have continued vitality.
 
 
 35
 The Revenue Procedure discussed herein is not contrary to section 265(a)(2), as judicially construed, and we see no reason why the IRS should not be held to its published views absent revocation or modification. The IRS is not exercising its unquestioned authority to revoke its previous position based on a mistake of law, notwithstanding taxpayer reliance. Dixon v. United States, 381 U.S. 68, 72-73, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965). Here, it is revoking a previous position based upon a change of heart. The position taken in Revenue Procedure 72-18 is harmonious with the Leslie and Cheeseman cases, and we endorse the broker-dealer exception to Cheeseman that it espouses. See Eli Lilly & Co. v. Commissioner, 856 F.2d 855, 865 (7th Cir.1988) (If a Revenue Procedure is properly characterized as a substantive statement, a belated reassessment of the controlling statute should not allow the Commissioner to take a position in litigation repudiating the position taken in the Revenue Procedure.). We rely on the reasonable legal position reflected in Revenue Procedure 72-18, however, rather than on any binding effect that it might have, in deciding that Dillon, Read has carried the burden of overcoming the presumption of correctness of the Commissioner's determination that the prohibited purpose existed.
 
 
 36
 The IRS suggests that application of a pure Leslie approach is contrary to this court's holding in Barenholtz v. United States, 784 F.2d 375 (Fed.Cir.1986). In Barenholtz, this court repeated the Cheeseman directive that there is no distinction between borrowing against tax-exempt obligations and borrowing to buy tax-exempt obligations. Barenholtz, 784 F.2d at 379. There was no distinction between these two transactions in Barenholtz, and we do not impugn the correctness of the statement made in that case. Neither Cheeseman, itself, nor Barenholtz, which follows Cheeseman, deals with the case of a broker-dealer having tax exempts as stock in trade. This difference is significant in our view. Although Revenue Procedure 72-18 was not discussed in the Barenholtz case, the statement equating borrowing against tax-exempt obligations with borrowing to purchase tax-exempt obligations was applied to an individual. Cheeseman applied that statement to a nondealer corporation. Dillon, Read is neither an individual nor a nondealer corporation, but is a broker-dealer; the IRS has published its position that different rules apply to untraceable interest expenses of broker-dealers in tax-exempt obligations. We adhere to that view.
 
 
 37
 This court has already approved use of the Leslie formula in E.F. Hutton Group, Inc. v. United States, 811 F.2d 581 (Fed.Cir.1987). Actually, no reported case is cited which supports the IRS in attempting to hit the same taxpayer in the same years with both the Cheeseman and the Leslie rules. We agree with the Hutton panel that the Leslie rule was fashioned to cover the case and should be followed. That some tax exempts happen to have been collateralized in this case is an economically irrelevant difference from Leslie that should not dictate a different rule. The benefit Dillon, Read derives from holding the tax exempts while incurring debt is not any different at all.
 
 
 38
 Were we writing on a clean slate, we might compare the literal language of section 265(a)(2) with the facts established here and come down with no disallowance at all. The slate is actually much scribbled on, though not by the United States Supreme Court, which visited the statue in 1931 to sustain its constitutionality, Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931), but has never attacked the interpretation problems it presents.
 
 C. The Stipulations
 
 39
 The parties have stipulated to all facts and figures material to the issues in this case. Our analysis of the stipulations reveals internal inconsistencies. The numbers to be plugged into the formulas are agreed to, and the final figures resulting from the formulas are agreed to, but application of the formulas to the stipulated figures does not produce the stipulated results. Our review of the record reflects a recognition on the part of both parties and the Claims Court that the figures stipulated to are not accurate. See, Transcript of Hearing on Cross-Motions for Summary Judgment at 44-48, 59-61; Dillon, Read, 15 Cl.Ct. at 265, n. 7. The parties are free to stipulate to whatever facts they wish, except they may not stipulate to facts known to be fictitious. The trial court has a duty to reject stipulations which are demonstrably false. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 497, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951); Kaminer Constr. Corp. v. United States, 488 F.2d 980, 988, 203 Ct.Cl. 182 (1973). On remand, greater care should be taken to insure that the stipulated figures are consistent with one another.
 
 
 40
 Further, the trial court acknowledged that its calculations under the Leslie rule fail to account for "indebtedness the interest on which is not subject to disallowance," i.e., clearly deductible interest. Dillon, Read, 15 Cl.Ct. at 265, n. 7. Inclusion of this figure in the Leslie calculation is mandatory. See E.F. Hutton Group, Inc. v. United States, 811 F.2d 581 (Fed.Cir.1987).
 
 Conclusion
 
 41
 The judgment of the Claims Court is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 Costs
 
 42
 Costs are awarded to Dillon, Read.
 
 
 43
 VACATED AND REMANDED.
 
 
 
 [1]
 Dillon, Read & Co. Inc. is the parent corporation of a group of corporations constituting the appellant. The affiliated corporations were named as parties to this action because they filed corporate consolidated income tax returns with their parent corporation. All references herein to "Dillon, Read" relate only to the parent corporation, Dillon, Read & Co. Inc
 
 
 [2]
 The years at issue in this case antedate the Tax Reform Act of 1986. All references are to the Internal Revenue Code of 1954, as amended
 
 
 [3]
 Clearly deductible interest is "indebtedness the interest on which is not subject to disallowance". Rev.Proc. 72-18, 1972-1 CB 740, 743 Sec. 7.02
 IRS Method
( Tax Exempt - Coll'd Tax Exempt )
( Assets Assets )
-------------------------------------------------------------------------------
( Total - Coll'd Tax Exempt - Assets with clearly )
( Assets Assets ded'ble interest )[3]
3 Clearly deductible interest is "indebtedness the interest on which is not
 subject to disallowance". Rev.Proc. 7218, 19721 CB 740, 743 Sec. 7.02.
( )
 MULTIPLIED BY
 ( Total - Interest on - Clearly )
 ( Interest Coll'd Tax Ded'ble )
 ( Exempt Assets Interest )
 PLUS
Interest on Coll'd Tax Exempt Assets
Dillon, Read Method
( Tax Exempt Assets ) X ( Total - Clearly )
------------------------------------------
( Total Assets - Assets with clearly ) ( Int. Ded'ble )
( deductible interest ) ( Int. )